IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-po-07015-MEH

USA;

    Plaintiff,

v.

CHRISTOPHER CORDOVA

    Defendant.

---

## MOTION TO DISMISS

---

Defendant, Christopher Cordova, by and through undersigned counsel, respectfully moves the court to dismiss the chaarges against him and in support thereof provides as follows:

### BACKGROUND

Defendant has been charged in this matter with two offenses: 1) Failure to comply with official signs under 41 C.F.R. § 102-74.385 and 2) the unlawful taking of photographs in public buildings under 41 C.F.R. § 102-74.420. The basis for these charges stemmed from Defendant's recording at the Social Security Administration Office at 8000 Southpark Ave in Littleton CO. Both charges are based on the same conduct - filming in a certain area of the Social Security Administration Office.

### ARGUMENT

1. **41 C.F.R. § 102-74.420 is Facially Unconstitutional**

41 C.F.R. § 102-74.420 prohibits the act of photographing or recording under certain conditions in spaces occupied by federal agencies. Because the act of recording implicates the First Amendment, this is a restraint on freedom of speech. Plaintiff challenges the constitutionality of this regulation federal property - in particular, "[s]pace occupied by a tenant agency for [commercial or] non-commercial purposes."

"[V]ideorecording is 'unambiguously' speech-creation, not mere conduct." *Irizarry v. Yehia*, 38 F.4th 1282, 1289 (10th Cir. 2022); *Animal Legal Def. Fund v. Kelly*, 9 F.4th 1219, 1228 (10th Cir. 2021). 'There is practically universal agreement that a major purpose of' the First Amendment 'was to protect the free discussion of governmental affairs.'" *Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 755, 131 S. Ct. 2806, 180 L. Ed. 2d 664 (2011) (quoting *Buckley v. Valeo*, 424 U.S. 1, 14, 96 S. Ct. 612, 46 L. Ed. 2d 659 (1976) (per curiam)). This purpose enables "the press . . . to serve as a powerful antidote to any abuses of power by governmental officials." *Mills v. Alabama*, 384 U.S. 214, 219, 86 S. Ct. 1434, 16 L. Ed. 2d 484 (1966). Filming the police and other public officials as they perform their official duties acts as "a watchdog of government activity," *Leathers v. Medlock*, 499 U.S. 439, 447, 111 S. Ct. 1438, 113 L. Ed. 2d 494 (1991), and furthers debate on matters of public concern. As the First Circuit noted, "An important corollary to this interest in protecting the stock of public information is that 'there is an undoubted right to gather news from any source by means within the law.'" *Glik v. Cunniffe*, 655 F.3d 78, 82 (1st Cir. 2011). Accordingly, the question of whether an individual may record on public land implicates the First Amendment.

"The First Amendment, as applied to state and local governments through the Fourteenth Amendment, provides that state actors 'shall make no law . . . abridging the freedom of speech.' U.S. Const. amend. I. The First Amendment applies not only to legislative enactments, but also to less formal governmental acts." *Hawkins v. City and County of Denver*, 170 F.3d 1281, 1286 (10th Cir. 1999). "The extent of the government's ability to restrict protected speech on public property depends upon the nature of the forum and whether the speech restriction is content-based or content neutral." *Hawkins*, 170 F.3d at 1286. In determining the nature of the forum, the Supreme Court has divided public property into (1) traditional public fora; (2) designated public fora; and (3) nonpublic fora. *Id*. (*citing Arkansas Educ. Tele. Common v. Forbes*, 523 U.S. 666, 677, 118 S.Ct. 1633, 1641, 140 L.Ed.2d 875 (1998).

Traditional public fora are places, such as streets, sidewalks and parks, which "have immemorially been held in trust for the use of the public and, time out of mind, have been used for the purposes of assembly, communicating thoughts between citizens, and discussion public questions." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983). *See also Hague v. CIO*, 307 U.S. 496, 515, 59 S.Ct. 954, 964, 83 L.Ed. 1423 (1939) (public streets and parks fall into the category of traditional public fora). The government has the highest burden in defending a restriction of free speech in a public forum. Such a restriction may be content-neutral or content-based. A content-based restriction must be shown to be "necessary to serve a compelling state interest" and "narrowly drawn to achieve that end. *Perry*, 460 U.S. at 45. Content-neutral restrictions in a public form will be upheld if they are "narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Perry*, 460 U.S. at 45; *Hawkins*, 170 F.3d at 1286.

The second category, a designated [*15] public forum, is one created by the government "by intentionally opening a non-traditional forum for public discourse." *Cornelius v. NAACP Legal Defense & Educ. Fund, Inc*., 473 U.S. 788, 802, 105 S.Ct. 3439, 3449, 87 L.Ed.2d 567 (1985); *Hawkins*, 170 F.3d at 1286. Neither party contends that the areas at issue were intentionally opened for public discourse by the City.

The third category, non-public fora, is any other government property; e.g. any that is "not by tradition or designation a forum for public communication." *Perry*, 460 U.S. at 46; *Hawkins*, 170 F.3d at 1287. The government has greater latitude to regulate speech in a non-public forum. A restriction in a non-public forum, whether or not content-neutral, will be upheld if it is reasonable in light of the purpose served by the forum and is "not an effort to suppress expression merely because public officials oppose the speaker's view." *Hawkins*, 170 F.3d at 1287.

The public land at issue in this case falls within this third category. Accordingly, the question is whether this restriction on all recording activity is reasonable in light of the purpose served by the forum. The issue here is that this is a broad regulation that applies to all public buildings. It is unclear what purpose is served by the forum because each forum may be wildly different. Moreover, as opposed to other forms of expression, the act of recording is silent and non-disruptive. Accordingly, this regulation is not reasonable as there is no defined purpose served through this restriction as applied to all public buildings.

2. **41 C.F.R. § 102-74.420 Was Vague As Applied to Defendant**

"Criminal offenses must be defined "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and

discriminatory enforcement." *United States v. Orona*, 724 F.3d 1297, 1310 (10th Cir. 2013). When challenging a regulation for vagueness, the relevant question in void for vagueness challenges is merely whether the defendant before us "had fair notice from the language" of the law "that the particular conduct which he engaged in was punishable." *Parker v. Levy*, 417 U.S. 733, 755, 94 S. Ct. 2547, 41 L. Ed. 2d 439 (1974); *see also United States v. Franklin-El*, 554 F.3d 903, 910-11 (10th Cir. 2009).

Here, 41 C.F.R. § 102-74.420 provides an exception to the general rule prohibiting recording on public land. It permits recording in "[b]uilding entrances, lobbies, foyers, corridors, or auditoriums for news purposes. Defendant was recording and livestreaming for news purposes. That leaves the only question of whether this carve out applies to him. In this case, the area he entered into was a large waiting room. A reasonable person may understand the term lobby to include this area - an understanding of which Defendant indeed possessed. As defined by the Cambridge dictionary, a lobby is "a large, open space just inside the main entrance of a public building such as a hotel, office building, or theater." https://dictionary.cambridge.org/us/dictionary/english/lobby. Similarly, the Britannica Dictionary defined lobby as "a large open area inside and near the entrance of a public building." https://www.britannica.com/dictionary/lobby.

As these definitions make clear, the lobby includes an area inside the entrance of a public building. Here, Defendant was arrested "immediately" after entering the facility. Ex. 1. At the very least, it is unclear from the language of this regulation whether Defendant's conduct was specifically exempted or not. Accordingly, Defendant was denied fair notice of the law's

demands. On this basis alone, the charges against Defendant should be dismissed for unconstitutional vagueness.

Respectfully submitted this 9th day of January, 2023.

/s/ Edward Milo Schwab
Edward Milo Schwab, #47897
Ascend Counsel, LLC
2401 S. Downing Street
Denver, CO 80210
(303) 888-4407
milo@ascendcounsel.co

*Counsel for Defendant*