**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**CHRISTOPHER J. CORDOVA,**<br><br>**Defendant.** | **Criminal No. 22-PO-07015-MEH** |

## UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Defendant Christopher Cordova contends that the Court should dismiss Count 2 of the criminal information against him—for violation of 41 C.F.R. § 102-74.420—because the regulation (1) is facially unconstitutional under the First Amendment, and (2) vague as applied to him. *See* ECF No. 5 ("MTD"). Each contention is meritless: the regulation did not infringe his First Amendment rights but imposed a reasonable and viewpoint neutral restriction in a nonpublic forum, and it provided him fair notice that filming inside the Social Security Administration ("SSA") office in Littleton, Colorado would lead to criminal consequences. Cordova does not challenge Count 1. But to the extent the Court construes his motion as also seeking dismissal of Count 1 on First Amendment grounds, that challenge would also fail.

## BACKGROUND

### 1. Cordova arrives at government office intending to unlawfully enter space

On August 2, 2022, Cordova arrived at the SSA office in Littleton at approximately 11:54 a.m. to record video inside the office. Exhibit ("Ex.") 1 at INV_10. Security officers

immediately informed him he could not record video inside the SSA's space because customers had personal information like Social Security numbers in the open. *Id.* Around the same time, Cordova began livestreaming video from his phone to a public YouTube channel. He stated to his audience that he intended to livestream from inside the SSA office "to exercise a First Amendment protected right." *See* Denver Metro Audits, *ARRESTED!!! For Recording in the in the Lobby at the Social Security Office*, August 2, 2022 (hereinafter, "Video"),[1] clip beginning at 10:30 and ending at 10:50. He predicted that the day would end in one of two ways: "We'll be allowed to be let in, or we are leaving in handcuffs." *Id.* at 11:55-12:15. When local police officers arrived, Cordova asserted that, in attempting to film inside the SSA office, he was "exercising his First Amendment rights, the same First Amendment rights these officers swore an oath to protect." *Id.* at 33:40-33:42.

Cordova acknowledged that officers told him "we are not allowed to record in there," but asserted that he would do so anyway ("we're about ready to just mob right in there right now"). *Id.* at 0:54-1:08. He was shown signs posted to the exterior and interior doors prohibiting his entry but stated that he need not follow them: "that just a piece of paper . . . that's not a law." *Id.* at 5:58-6:16. He was told he could enter the SSA's space to get brochures and talk to SSA representatives so long as he did not record inside. *Id.* at 2:02:33-2:03:20.

---

[1] The video is available at https://www.youtube.com/watch?v=yYb5ZdzKG00 (last visited January 24, 2023).

Indeed, during the livestream, Cordova stated multiple times that officers told him he could not film inside the SSA's interior space. *See, e.g.*, *id.* at 26:03-26:22. He also zoomed in and read aloud for his livestream viewers the official signs that prohibited photography while inside the SSA offices, which included signs posted to the exterior and interior door:


**Interior door (zoomed in)**




**Interior door (zoomed out)**



**Exterior door (zoomed in)**




**Exterior door (zoomed out)**



He was also given a paper copy of 41 C.F.R. § 102-74.420, with the language prohibiting photography inside space occupied by a federal executive agency highlighted. An officer further explained to Cordova that the regulation prevented him from filming in space occupied by the SSA. *Id.* at 1:59:01-2:01:21. The officer told Cordova that the entire SSA office fit that definition. *Id.* Cordova later read this regulation to his livestream viewers. *Id.* at 2:15:05-2:15:46.

**2. Cordova disregards regulation, signs, and directives and livestreams inside agency space anyway, leading to his arrest**

At approximately 3:00 p.m., Cordova walked from the entryway—where he had been filming for approximately three hours—through the interior door to the SSA office. Ex. 1 at INV_11. Before he entered, he said "I already told him we are going in guys, we are going in. If they want to cite me or arrest me or whatever, I mean, that's what's going to happen, but we are going in." Video at 2:49:00-2:49:13. As he began to livestream his entrance, he asked rhetorically "Should I go in? Here I go guys" as he was told by a friend that "they are going to arrest you now, get ready." *Id.* at 3:14:25-3:14:31. He continued to livestream video as he began to walk through the office. *Id.* at 3:14:32-3:14-56. Officers arrested him and seized the cell phone he used for his livestream. *Id.* Cordova received two violation notices: (1) failure to comply with official signs of a prohibitory nature and with directives of a law enforcement officer, in violation of 41 C.F.R. § 102.74.385, and (2) unlawful photography in the interior of the SSA Office, in violation of 41 C.F.R. § 102.74.420. *See* ECF No. 1 (Violation Notices). On November 10, 2022, he was charged with violating these same regulations in a two-count criminal information. *See* ECF No. 2.

## ARGUMENT

Cordova asserts that 41 C.F.R. § 102-74.420 (Count 2) is facially unconstitutional under the First Amendment and unconstitutionally vague as applied to him. Both assertions fail. He does not challenge Count 1 (for violating 41 C.F.R. § 102-74.385), but that challenge would also fail.

### I. 41 C.F.R. § 102-74.420 is not unconstitutional on its face because the photography restriction is reasonable to further the purposes served by federal agencies

Cordova argues that 41 C.F.R. § 102-74.420 violates the First Amendment on its face. In support, he offers only a single argument: that the regulation is unreasonable because the purpose served by a regulation applying to multiple federal executive agencies "is unclear" when agencies "may be wildly different." MTD at 4. His argument ignores the purpose of the GSA regulations he is challenging, which unambiguously specify a reasonable purpose of ensuring agencies can fulfill the missions and objectives they are legally obligated to perform.

The government does not dispute Cordova's claim that an SSA office is a nonpublic forum and that, as a result, the regulation is valid as long as it is reasonable. MTD at 4. Government restrictions on speech in a nonpublic forum need only be viewpoint neutral and reasonable in light of the forum's purpose. *See Int'l Soc. for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 679 (1992); *Hawkins v. City and County of Denver*, 170 F.3d 1281, 1288 (10th Cir. 1999). Reasonable does not mean that the restriction is "the most reasonable or the only reasonable limitation." *Krishna*, 505 U.S. at 683 (citing cases). A restriction is reasonable if it "'preserv[es] the property for the use to

which it is lawfully dedicated.'" *McDonnell v. Denver*, 878 F.3d 1247, 1254 (10th Cir. 2018) (citation omitted).

Cordova ignores the text and context of this regulation when he concludes that its purpose is unclear. MTD at 4. The purpose of the photography restriction—like other regulations contained in the General Service Administration's ("GSA") facility management regulations in Part 102-74 of Title 41 of the Code of Federal Regulations—is to ensure that federal executive agencies can provide services "consistent with their operational needs" and accomplish "overall Government objectives." 41 C.F.R. § 102.74.10. The GSA reasonably prohibits photography as well as a variety of other expressive conduct in agency space that can interfere with operational needs or the ability of executive agencies to fulfill their objectives, including soliciting (41 C.F.R. § 102-74.410), commercial advertising (41 C.F.R. § 102-74.410), posting flyers (41 C.F.R. § 102-74.415), and making loud or unusual noises (41 C.F.R. § 102-74.390).[2] The importance of allowing executive agencies to operate efficiently and to fulfill their objectives is undeniable. "Government agencies are charged by law with doing particular tasks [and take actions] to help do those tasks as effectively and efficiently as possible." *Waters v. Churchill*, 511 U.S. 661, 674-75. Executive agencies must remain "perpetually in operation" and are entrusted with vindicating the public interest and fulfilling

[2] Multiple courts have imposed and upheld criminal penalties under GSA's regulations. *See generally United States v. Baldwin*, 745 F.3d 1027 (10th Cir. 2014); *United States v. Strong*, 724 F.3d 51 (1st Cir. 2013); *United States v. Bichsel*, 395 F.3d 1053, 1055 (9th Cir. 2005); *Askins v. U.S. Dep't of Homeland Sec.*, No. 12-CV-2600 W (BLM), 2015 WL 12434362, at *8 (S.D. Cal. Jan. 29, 2015).

"constitutionally assigned functions." *See NLRB v. Noel Canning*, 573 U.S. 513, 556 (2014); *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 443 (1977).

Restricting activities that disrupt the operations of federal executive agencies is reasonable by any definition. The Supreme Court said much the same in *Krishna*, when it upheld a solicitation ban at an airport based on the "disruptive effect" of solicitation on airport operations. *Krishna*, 505 U.S. 683-84. The purpose of a restriction on photography in federal agency space is not only reasonable but also is a sign of good governance: the ordinary citizen and taxpayer expects federal agencies to use their space as efficiently and effectively as possible, and to minimize disruptions that hinder the agency's mission or public services. A videotaping restriction is consistent with both Supreme Court and Tenth Circuit precedent upholding the same type of restriction in nonpublic forums. *See Estes v. Texas*, 381 U.S. 532, 544-45 (1965); *Combined Comms. Corp. v. Finesilver*, 672 F.2d 818, 821 (10th Cir. 1982). In *Finesilver*, the Tenth Circuit upheld a local rule of procedure that allowed the press to attend settlement negotiations but prohibited the use of television cameras to record them. *Id.* at 820. The Court observed that the press was not denied access to the meetings; the press "was free to attend, take notes, and disseminate any information." *Id.* at 821. The local rule reasonably guarded against "the potential disruption to the meeting" caused by filming. *Id.* The same is true here: officers informed Cordova that he could enter the SSA's occupied space so long as he did not try to record video inside the space. He could take brochures or notes.[3] After leaving the

[3] At least one court has found that videotaping bans are permissible in a similar context even without resort to a forum analysis, because they do not limit the right of access or prohibit any speech but only "the manner in which that access occurs." *Whiteland*

SSA's occupied space, he could livestream himself talking about the experience. He simply could not livestream while inside the occupied space. The presence of these "substantial alternative channels" for Cordova to communicate his views further supports the reasonableness of the GSA's videotaping restriction. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37 (1983). As officers in *Finesilver* could enforce a rule to limit potential disruption to settlement negotiations, the officers at SSA's office could do the same when Cordova threatened to disrupt SSA operations and deter SSA customers who wanted to conduct business at SSA's office. Simply put, Cordova's actions were not "compatible with the intended purpose of the property" as a space for the SSA to fulfill the agency's mission. *Perry*, 460 U.S. at 49.

Cordova's reliance on cases discussing video recording as a form of speech creation is misplaced. *See* MTD at 2. These cases relate to recording video in a public forum. *See Irizarry v. Yehia*, 38 F.4th 1282, 1292 (10th Cir. 2022) ("[W]e conclude there is a First Amendment right to film the police performing their duties in public."). The government does not dispute that video recording is afforded some protection under the First Amendment—as are other activities prohibited in federal agency offices by the GSA regulations, such as solicitation, posting flyers, and commercial advertising. Courts impose heightened scrutiny when reviewing these restrictions in a ***public forum***. *See Mocek v. City of Albuquerque*, 813 F.3d 912, 931 (10th Cir. 2015) ("[E]ven if we agreed there is a First Amendment right to record law enforcement officers in *public,* we would

---

*Woods, L.P. v. Township of West Whiteland*, 193 F.3d 177, 183 (3d Cir. 1999) (upholding ban on videotaping at township planning commission meeting). Even assuming a stricter forum analysis here, Cordova's challenge fails.

still need to determine whether that conduct is protected [in a nonpublic forum].” (italics in original)). The narrow question here, however, is whether Cordova had a right to exercise this right in a ***nonpublic forum*** in which the GSA imposed a reasonable restriction to help federal executive agencies meet their operational needs and efficiently use taxpayer dollars. He did not.

## II. 41 C.F.R. § 102-74.420 provided fair warning to Cordova and thus was not vague

Cordova also raises a due process challenge that 41 C.F.R. § 102-74.420 is too vague to provide him fair notice that his conduct of filming inside agency-occupied space was prohibited. *See* MTD at 4-6. Not so.

To survive a vagueness challenge, criminal offenses must provide “sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.” *United States v. Orona*, 724 F.3d 1297, 1310 (10th Cir.2013). A defendant “may complain *only* about the vagueness of the law as it applies in *his own case*” and cannot “complain . . . as it applies to *other* defendants in *other* cases.” *United States v. Baldwin*, 745 F.3d 1027, 1031 (10th Cir. 2014) (rejecting vagueness challenge under 41 C.F.R. § 102.74.385 (italics in original)). So long as a defendant had “fair notice” that “the particular conduct which he engaged in was punishable,” the Court must reject his vagueness challenge. *Baldwin*, 745 F.3d at 1031-32 (citing *Parker v. Levy*, 417 U.S. 733, 755 (1974)).

The regulation gave Cordova fair notice that his conduct was punishable. First, the opening clause of the regulation makes clear that photographs “may be taken” only where not prohibited by “security regulations, rules, orders, or directives.” Here, SSA’s written

security directive prohibited photography. And officers stationed in the SSA space verbally gave Cordova a security order that he could not take the photographs inside. This posted sign and verbal order are sufficient to defeat any vagueness as it applies "in *his own case*." *Baldwin*, 745 F.3d at 1031.

Second, even absent a security directive or order, the regulation plainly states that persons cannot take photographs in space occupied by a federal agency without that agency's permission. Cordova seeks to avoid the plain text by taking a single word out of context: he argues that the charge against him under 41 C.F.R. § 102-74.420 centers on whether he filmed inside a "lobby". MTD at 5-6. He reasons that, if the government claims the space is not a "lobby," the regulation did not provide fair notice of the government's interpretation of the word "lobby." *Id.*

But that reasoning ignores the word that precedes "lobby":

> Except where security regulations, rules, orders, or directives apply or a Federal court order or rule prohibits it, persons entering in or on Federal property may take photographs of -
>
> > (a) ***Space occupied by a tenant agency*** for non-commercial purposes only with the permission of the occupying agency concerned;
> >
> > (b) ***Space occupied by a tenant agency*** for commercial purposes only with written permission of an authorized official of the occupying agency concerned; and
> >
> > (c) ***Building*** entrances, lobbies, foyers, corridors, or auditoriums for news purposes.

41 C.F.R. § 102-74.420 (emphases added). Count 2 is about whether he was in a "building" or in "space occupied by a [federal] agency." There is no ambiguity on that question. As security officers informed him before he livestreamed his criminal offense,

he was in space occupied by the SSA. Video at 1:59:01-2:01:21. Photography is prohibited in the entirety of space occupied by the agency, including in lobbies of agency-occupied space. *See* 41 C.F.R. § 102-74.420(a)-(b). Although some federal agencies share buildings with other government or non-governmental tenants and may contain shared "building" lobbies not occupied by a particular agency, SSA was not in such a building. Cordova was fully aware of the fact that the whole SSA office was agency-occupied space; even if he ignored the text of the regulation, officers patiently explained its meaning to him, including that the SSA occupied the area where he wanted to film.

Finally, Cordova's own words defeat his vagueness challenge. Immediately prior to filming inside SSA space, he announced on his livestream that filming inside was punishable by arrest or ticket. His voidness claim—which depends on him not knowing his conduct was punishable—contradicts his frequent admissions during the video he livestreamed that he knew his conduct was punishable.

## III. Cordova does not—and has no basis to—challenge the First Amendment validity of SSA's prohibitory signs

Cordova's motion never challenges Count 1 of the criminal information against him, for failing to comply with official signs of a prohibitory nature and with the lawful direction of authorized officers (in violation of 41 C.F.R. § 102-74.385). Nor could he. The prohibitory signs in SSA's Littleton office and directions from authorized officers prohibiting him from recording video inside SSA's office space did not infringe his First Amendment rights. To the extent the Court construes his motion as encompassing Count 1, the signs and officer commands are well supported by First Amendment precedent.

The SSA signs prohibiting the taking of photos or video were prominently displayed

at the exterior and interior entrance doors. Cordova dismissed the sign as a "piece of paper" and "not a law." His intentional disregard came at his own peril, however, and in violation of reasonable—and thus constitutionally valid—SSA prohibitory signs and directions from authorized officers.

The SSA "provides financial protection for our nation's people" by administering at its field offices "old-age, survivors, and disability" benefits and enrolling individuals in Medicare. 42 U.S.C. § 901; SSA, *About Social Security*, https://www.ssa.gov/about-ssa (last accessed January 20, 2023). To access these benefits, customers need to display documents that contain confidential personally identifiable information (PII) that they do not want to appear on a YouTube livestream or have conversations about their PII with SSA claims representatives. On the day of Cordova's livestream, members of the public can be seen entering the SSA field office throughout the day to transact business for purposes of obtaining financial protection and government benefits. Based on the forum's purpose of administering public benefits to customers after collecting PII and identifying documents, the SSA through its sign reasonably restricted Cordova and others whose videography "presents risks of duress" to these customers or may disrupt operations such as the presenting of confidential documents to SSA representatives. *See Krishna*, 505 U.S. at 683-84.

## CONCLUSION

The Court should deny Cordova's motion. The photography restriction in 41 C.F.R. § 102-74.420 imposes a reasonable and viewpoint-neutral restriction on the manner of access to a nonpublic forum. Nor was it vague as applied to Cordova because he had fair

notice that his conduct would be punishable. The Court should deny his motion to dismiss Count 2, and Cordova has not challenged Count 1.

DATED this 24th day of January, 2023.

COLE FINEGAN
United States Attorney

s/ Craig Fansler
Craig Fansler
Assistant United States Attorney
United States Attorney's Office
1801 California Street, Suite 1600
Denver, Colorado 80202
Phone: (303) 454-0100
Fax: (303) 454-0403
E-mail: Craig.Fansler2@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on January 24, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record in this case.

s/ *Breanna McCall*
Breanna McCall
Legal Assistant
United States Attorney's Office