**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>v.<br><br>**CHRISTOPHER J. CORDOVA,**<br><br>Defendant. | **Criminal No. 22-PO-07015-MEH** |

**UNITED STATES' SENTENCING STATEMENT**

This case arose because Christopher Cordova thought YouTube fame and money trumped the privacy rights of Social Security Administration (SSA) customers and justified the harassment of security officers tasked with protecting these customers' confidential information. After his arrest, he doubled down on his crime to gain more profits: he posted to his YouTube channel highlight and recap videos and, weeks later, created a further video berating one of the same security officers when he found him at a daycare operated in a different federal building. YouTube records suggest Cordova earned more than $11,000 in ill-gotten gains from video content related to his crime. Based on the factors in 18 U.S.C. §§ 3553(a) and 3572(a), his conduct warrants 160 hours of community service and a $5,000 fine.

**I.      Background**

On November 10, 2022, the government charged Cordova in a two-count information for: (1) failure to comply with official signs and lawful directions (in violation of

1

41 C.F.R. § 102.74-385) and unlawful photography (in violation of 41 C.F.R. § 102.74-420). *See* ECF no. 3. The maximum term of imprisonment for these convictions is 30 days; the maximum fine is $5,000. 41 C.F.R. § 102-74-450; 18 U.S.C. § 3571(b)(6).

### A.   *Facts related to incident*

At trial, the government's evidence established that, on August 2, 2022, Cordova viewed at least four signs and was told at least eight times he could not record inside the SSA office in Littleton, Colorado. He stated when he began recording—more than three hours before he tried to film inside—that he knew he "was not allowed to record" but planned to "just mob right in there" anyway. Trial Exhibit (TX) 1, at 0:54 to 1:13. He was told multiple times his conduct was prohibited by both the Code of Federal Regulations and SSA policy. Signs were posted. Instructions were given. The reasons underlying the prohibitions were explained (including protecting customer privacy for official business that involved sensitive personally identifiable information). He was told if he filmed inside the agency space he would be arrested. He did and was. On March 20, 2023, the Court found Cordova guilty of both counts after a one-day bench trial that occurred on March 16, 2023. *See* ECF. no. 16.

### B.   *Facts related to post-arrest conduct*

<u>Further attempts to monetize August 2</u>. Cordova posted at least three summary videos about his arrest. This included at least two "shorts"—which are brief highlight videos or compilations—and an hour-long livestream around early September where he had a panel discussion with others to recap his arrest. *See, e.g.*, Sentencing Exhibit (SX) 1 (recap video); SX 2 (screenshot of YouTube shorts captured on April 4, 2023, with those

from August 2 appearing on page 6). Cordova's videos encouraged viewers to send money, to join as members by paying a monthly membership fee, and to subscribe to and watch previous and future content. Videos also contained links to Cordova's merchandise, including sweatpants and phone covers that contain catch phrases he used in the August 2 video. Some merchandise, for example, refers to Cordova's "Give me 5 bucks" catchphrase, which he said to security guards on August 2 to explain that he asks for five bucks when law enforcement give him orders he doesn't like. *See, e.g.*, TX 1 at 43:17 to 43:27 ("I have my own policy that everyone I talk to has to **give me five bucks** that gives me unlawful directives, so that's, that's how it goes guys." (emphases added)).

*Screenshot from YouTube channel showing merchandise links*

| Give Me $5 iPhone Clear Case | Denver Metro Audits Gear iPhone MagCase | JUST DO BETTER All-Over Print Joggers |
|---|---|---|
| $25.99 | $27.99 | $59.99 |
| From Spring | From Spring | From Spring |

New livestream created based on August 2. Following his first court appearance on his violation notices, Cordova found one of the security officers who had been at the SSA office stationed across the street from the courthouse at a day care operated in a federal building. As parents dropped off children, Cordova livestreamed himself for twenty

minutes yelling from outside the door at the officer based on his August 2 arrest, such as the following:

> "Freaking idiot, who you going to call on me bud, ghostbusters? You can't do nothing, man. You don't have authority, remember, we talked about that. You can't touch us bud. What you're doing right there is all you are allowed to do. Observe and report. You freaking clown. You're a disgrace, man. You're a psychopath narcissist and you shouldn't have any authority over any other human. You clown. You are a coward in a clown suit, you piece of crap. That's what you are, bro. You're a disgrace. You're the biggest piece of shit I've ever met in my whole life, bro, since I've been doing this. Literally. You're the biggest piece of shit I've ever met since I've been doing this you freaking idiot. You're a piece of shit bud. That's what you are. You are a coward in a clown suit you piece of shit. That's all you are. Is a little bitch ass piece of shit. Pussy. You're a fucking pussy, bitch. Fuck you. You ain't going to do shit. Idiot. Fucking idiot. Sorry guys, I don't like getting that mad, but I can't stand this guy."

SX 3 (video) at 13:35 to 15:00; *see also id.* at 19:10 to 20:20 (similar, as parent drops off child).

Money earned from August 2-related content. Records obtained from Google show that Cordova earned over $700 in earnings attributable to the unique webpage of the August 2 video and over $11,000 from his YouTube channel in the months while he continued to post content related to August 2:

| Month | Earnings from Aug. 2 video URL | Earnings from YouTube channel |
|---|---|---|
| August | $ 625.75 | $ 2,718.78 |
| September | $ 26.79 | $ 1,630.23 |
| October | $ 23.00 | $ 1,874.04 |
| November | $ 18.78 | $ 2,133.99 |
| December | $ 12.97 | $ 3,223.69 |
| Total | $ 707.28 | $ 11,580.73 |

Revenues[1] earned by Cordova were visible to him in real-time during the livestream feed. As one example, YouTube allowed Cordova to enable "SuperChats" where users could fund Cordova and get their comments and donation amounts posted prominently in the Live Chat Replay. *See* SX 6 (screenshots from August 2 video). Throughout the livestream, Cordova reminded viewers to support his work by transferring money to him directly on YouTube or through his CashApp, PayPal, and Venmo accounts. *Id.* Indeed, after he was arrested, he made a direct appeal for money and told viewers he preferred they send money via other money transfer applications like Venmo because YouTube took a cut before it went to his account. TX 4, at 3:54:36 to 3:55:37.

Subsequent arrests and convictions. Following the filing of an information in this case in November 2022, Cordova was arrested, charged, and convicted twice for misdemeanors involving impeding or disregarding law enforcement. On December 14, 2022, he was arrested in Sheridan, Colorado for conduct related to filming in a public space in violation of state law. On June 14, 2023, he was found guilty and sentenced to six months of unsupervised probation and twenty hours of community service. On March 13, 2023, he was arrested on an obstruction charge. He was found guilty in June 2023.[2]

---

[1] For the detailed records from Google underlying this summary chart, see SX 4 (detail for URL of August 2 video); SX 5 (detail for Cordova's Denver Metro Audits channel).

[2] The government has limited information about the arrests, charges, and convictions based on law enforcement and court databases and statements posted by Cordova to his YouTube channel. As the circumstances of these convictions may justify a more severe sentence including jail time based on § 3553(a) factors, the government renews its request that the Court order the Probation Office to prepare a pre-sentence criminal history report. *See* ECF No. 17 ¶ 1.

## II.  Legal Analysis

When sentencing a defendant convicted of a Class B misdemeanor, the same statutory sentencing factors in 18 U.S.C. § 3553(a) apply but the sentencing guidelines do not. *See United States v. Pierce*, 75 F.3d 173, 177 n.1 (4th Cir. 1996); U.S.S.G. § 1B1.9. In setting a fine, the court must consider these § 3553(a) factors and additional factors in 18 U.S.C. § 3772(a), including the need to deprive the defendant of illegally obtained gains from the offense and the defendant's income.

Based on (A) Cordova's willful and premeditated decision to engage in criminal disobedience, (B) his history of convictions for similar conduct, (C) the need to deter and punish a crime that consisted of putting profits ahead of agency customers and law enforcement, and who continued his pattern of disregard and harassment of them for months after August 2, and (D) the need to deprive a defendant of ill-gotten profits exceeding $5,000, the government recommends 160 hours of community service and a maximum fine of $5,000.

### A.  *Nature and circumstances of offense*

Cordova willfully chose to photograph inside federal agency space despite warnings about the consequences. His conduct was premeditated: he admitted during the video that he knew before he ever showed up at the SSA on August 2 that filming inside agency space was against SSA rules, and that was precisely the point. *See* TX 1, at 15:23 to 15:29 ("I've been wanting to do this for a long time."). His premeditated purpose—to break the law for attention on YouTube—existed before he arrived on August 2 and remained unchanged until the moment of his arrest.

The circumstances are aggravated by Cordova's disregard for others while committing his crime. In his livestream, customers seeking disability and elder benefits, often accompanied by caretakers, can be observed entering the SSA office. Several customers directly complained to Cordova about his filming. Others complained to the SSA. Cordova's actions showed no regard for these customers and his disrespect for every security officer whose job was to ensure that these customer's private and sensitive information was protected while accessing government services.

While the willful nature of the violation supports jail time, the government recommends a sentence of community service as appropriate to remedy the community-based harm that Cordova's actions caused to SSA customers in the Littleton community and the needless waste of law enforcement resources and attention he caused in the community on that day.

B.  *History and characteristics of defendant*

Cordova's post-arrest conduct also is an aggravating factor for sentencing. Far from being deterred from his arrest in this case, he was emboldened, as established by:

- his two subsequent arrests for similar conduct.
- his later harassment of one of the security officers present on August 2. Consistent with the pattern observed in his August 2 livestream, Cordova showed little regard for those affected by his actions, such as parents dropping off children at the daycare.
- his decision to create recap videos, where he expresses that his arrest for a crime is something to celebrate rather than to learn from.

7

Repeatedly, Cordova has elevated his own interests over others' and the law. The court should consider this pattern in imposing a 20-day sentence and maximum fine.

### C. Purposes of sentencing

Because Cordova has been willing to disrespect the law if it comes with profit, was not deterred by his arrest, and has multiple convictions for similar petty crimes, a near-maximum sentence is needed to provide deterrence, restore respect for the law, and mete out just punishment to Cordova.

Deterrence. Cordova's post-arrest conduct and convictions for similar conduct show that an arrest or conviction alone will not provide specific deterrence, and that a meaningful sentence is needed. As to general deterrence, it is clear in Cordova's video that there is a community of other YouTube users he follows, and who follow him, that are watching to see what sentence the court imposes and whether they should take similar actions. To this end, Cordova recently appeared on a YouTube video with another YouTube user discussing all three of his recent convictions and stating that he is awaiting his federal sentencing hearing in August. The Court's sentence needs to send a message of general deterrence that the profits that can be earned from crime-related content are not worth the cost.

Respect for the law. Cordova's August 2 video evinces his disrespect for the law and disdain of law enforcement officers. In these circumstances, it is important that his sentence restore respect for the law.

Just punishment. Cordova was not justified in harassing others to earn money. He was not justified in willfully breaking the law and attempting to interfere with security

officers who were trying to protect the personal information of SSA customers. The sentence should provide punishment for someone who put his own desire for fame or fortune over empathy for those affected by his conduct.

        *D.*      *Defendant's income and ill-gotten gains*

A maximum fine is needed to deprive Cordova of the income he earned from his crime. Earnings attributable to Cordova's unlawful conduct on August 2 exceeded $5,000. By Cordova's own admission, August 2 was a milestone for his YouTube channel in terms of revenue and subscribers: during his livestream, he stated that he had never had more than 700 people viewers previously and repeatedly expressed gratitude for the more than 3,100 viewers that watched him get arrested. TX 1, at 15:12 to 15:23. Cordova wanted to create entertainment—and thus revenues—and his arrest and harassment and disregard of others were tools to entertain viewers and earn profits. He calculated that he would gain more in profit than he would lose in legal consequences for disrespecting the law.

The Court should show he miscalculated through a meaningful fine. The maximum fine of $5,000 will begin to take away these unlawful gains. It takes back approximately 50% of the $11,000 in revenue earned from his YouTube channel in the months while he posted August 2-related content. Although meaningful, this fine is a fraction of Cordova's ill-gotten profits from August 2. Among other reasons, he told viewers he preferred they pay him through other money-transfer apps; records from these other accounts would show additional profits. He marketed merchandise based on his arrest. And each new subscriber he gained from August 2-related content also represented an ongoing revenue

stream who would not otherwise have viewed future content, paid for monthly membership, donated money, or purchased merchandise.

## III. Conclusion

The United States requests that the Court impose a sentence of 160 hours of community service and impose the maximum fine of $5,000. Should the Court order a pre-sentence criminal history report before sentencing and obtain additional information that establishes a close relationship between conduct underlying Cordova's two subsequent convictions and his federal convictions, the United States may supplement its filing if warranted by the § 3553(a) sentencing factors.

Respectfully submitted this 7th day of July, 2023.

          COLE FINEGAN
          United States Attorney

By: *s/ Craig G. Fansler*
     Craig G. Fansler
     Thomas J. Minser
     Assistant United States Attorneys
     1801 California Street, Suite 1600
     Denver, Colorado 80202
     Tel: (303) 454-0100
     Fax: (303) 454-0409
     Craig.Fansler2@usdoj.gov
     Thomas.Minser@usdoj.gov
     Attorneys for the Government

**CERTIFICATE OF SERVICE**

I hereby certify that on the 7th day of July, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record in this case.

                                              *s/ Lamesia Johnson*
                                              Lamesia Johnson
                                              Legal Assistant
                                              United States Attorney's Office