IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>CHRISTOPHER J. CORDOVA,<br><br>    Defendant. | Criminal No. 22-PO-07015-MEH |

### UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR STAY PENDING APPEAL

Christopher Cordova asks the Court to stay his sentence pending appeal. *See* ECF No. 31 ("Mot."). The Court should deny the motion, which rehashes arguments previously rejected in this case and by the Supreme Court and Tenth Circuit.

### I.     Factual Background

On August 2, 2022, Cordova livestreamed inside the Social Security Administration (SSA) office in Littleton, Colorado. ECF No. 1. Because he disregarded all signs and commands prohibiting this filming, officers issued Cordova two violations for petty offenses. *Id.* On November 22, 2022, the United States charged Cordova in a two-count information. ECF No. 3.

On January 9, 2023, Cordova filed a motion to dismiss. He did not challenge Count 1 (failure to follow official signs and directions in violation of 41 C.F.R. § 102-74.385). He challenged Count 2 (unlawful photography in violation of 41 C.F.R. § 102-74.420) on First Amendment and due process grounds. ECF No. 5. On February 27, 2023, the Court denied the motion without prejudice. ECF No. 9.

On March 21, 2023, following an earlier bench trial, Cordova was convicted of both counts. ECF No. 16 ("Verdict"). Prior to the trial, the United States noted that Cordova raised only a facial First Amendment challenge that was not relevant at trial. ECF No. 10, at 4-7. During the trial, Cordova renewed his challenges to Count 2 on First Amendment and due process grounds. The Court rejected the due process challenge in its written verdict. Verdict at 6-7. The Court further noted that Cordova "does not challenge the meaning of [the regulation charged in Count 1]." *Id.* at 4.

On September 27, 2023, following extended discussion of the sentencing factors in 18 U.S.C. §§ 3553(a) and 3572(a), the Court pronounced a sentence of 15 days' imprisonment on Count 1, 2 years' probation on Count 2, and a $3,000 fine. ECF No. 30. Between his August 2, 2022 arrest in this case and his sentencing on September 27, 2023, Cordova was arrested four other times and charged with petty offenses locally: in December 2022 and in March, August, and September 2023. ECF No. 28, at 8. Two of those arrests had resulted in convictions by the time of sentencing; two remained pending. In a written filing and during the sentencing hearing, the government argued that all four arrests were relevant under the sentencing factors in 18 U.S.C. § 3553(a). *See* ECF No. 26; *United States v. Lente*, 759 F.3d 1149, 1167-68 (10th Cir. 2014).

**II.     Stay of the Court's sentence is not warranted**

   *A.     The Nken factors govern whether the Court should stay execution of Cordova's sentence*

Cordova contends that the Court should base its decision whether to stay his sentence on 18 U.S.C. § 3143. Mot. at 1-2. That provision does not relate to whether to stay a sentence, but the different issue of whether the Court should detain or grant bail to

a defendant who is awaiting imposition or execution of a sentence (such as whether to allow self-surrender following sentencing or to detain between a guilty verdict and sentencing).  *See, e.g.*, *United States v. Coleman*, No. CR 15-543, 2022 WL 17905313, at *4 n.2 (E.D. Pa. Dec. 23, 2022) (distinguishing 18 U.S.C. § 3143 and Rule 38).

Instead, Federal Rule of Criminal Procedure 38 governs whether a Court should stay a petty-crime sentence.  Fed. R. Crim. P. 58(g)(3).  "A stay is an intrusion into the ordinary processes of administration and judicial review." *Nken v. Holder*, 556 U.S. 418, 427 (2009). A defendant bears a heavy burden to prevent the Court's sentence from taking effect.  In considering a motion to stay, a Court must consider:

(1) Whether the defendant has made a "strong showing" that he is likely to succeed on the merits of his appeal,

(2) Whether the defendant would be irreparably injured absent a stay,

(3) Whether issuance of the stay will injure other parties to the proceeding, and

(4) The public interest.

*Id.* at 426. Here, each factor disfavors a stay.

   B.   *Binding precedent forecloses Cordova's ability to show he is likely to succeed on appeal*

Cordova's motion repeats arguments rejected previously about the First Amendment, the meaning of 41 C.F.R. § 102-74.420, and the use of post-arrest conduct during sentencing.  Mot. at 3-4.  Because each challenge is not likely to succeed, the first *Nken* prong disfavors a stay.  In a case raising constitutional

3

challenges, this factor of "likelihood of success on the merits is often dispositive." *See Bristol Reg'l Women's Ctr., P.C. v. Slatery*, 994 F.3d 774, 777 (6th Cir. 2021).

      i.    <u>Cordova is not likely to prevail on a First Amendment appeal</u>

Cordova asserts that he "is aware of no caselaw across any circuit addressing the right to record in a public space." Mot. at 3. The government provided three such cases in response to the same argument in Cordova's motion to dismiss. *See* ECF No. 7 (citing *Estes v. Texas*, 381 U.S. 532, 544-45 (1965); *Combined Comms. Corp. v. Finesilver*, 672 F.2d 818, 821 (10th Cir. 1982); *Whiteland Woods, L.P. v. Township of West Whiteland*, 193 F.3d 177, 183 (3d Cir. 1999). Each case shows he is unlikely to succeed if he renews this same argument on appeal.

And it is well-settled that agencies can prohibit certain forms of expression--whether livestreaming, leafletting, or soliciting—on agency property when it disrupts agency business. Cordova never articulated any reason why videotaping was more valuable or less disruptive than these other forms of speech or any reason these other cases did not defeat his First Amendment challenge. Nor could he; as the government noted in its trial brief:

> It is well settled that the government may, in a nonpublic forum, "restrict use to those who participate in the forum's official business." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 53 (1983); *see also Make the Road by Walking, Inc. v. Turner*, 378 F.3d 133, 147 (2d Cir. 2004) ("With regard to property used to carry out specific government functions, government may reasonably reserve expression on that property exclusively for those conducting official business."). It may do so through regulation (as GSA did here) or policy (as SSA did). *Compare United States v. Kokinda*, 497 U.S. 720, 733-34 (1990) (regulation) *with*

4

>   *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 810
>   (1985) (policy).

ECF No. 10, at 6.  Cordova's First Amendment argument runs counter to overwhelming Supreme Court and Tenth Circuit precedent and is not likely to succeed on appeal.

> ii.  <u>It was not clear error to find Cordova filmed in space occupied by an agency, and he had fair notice his conduct was unlawful</u>

Cordova next disputes his conviction under 41 C.F.R. § 102-74.420, contending that (1) the Court erred in finding he filmed in space occupied by an agency and—even if it was not error—(2) Cordova may have "reasonably understood" it to be a lobby.  Mot. at 3. Each contention is meritless.

First, Cordova cannot show—as he would be required to do—that the court clearly erred in its factual finding that he was filming in space occupied by an agency. On appeal, the factual finding that Cordova was filming in space occupied by an agency (paragraphs (a) and (b) space) rather than space not occupied by an agency (paragraph (c) space) is reviewed for clear error.  *See United States v. Lantis*, 17 F.4th 35, 38 (10th Cir. 2021).  He cannot meet this standard when the written verdict makes detailed factual findings before concluding that Cordova was filming in a space where the agency conducted its business.  Verdict at 6.

Second, he is incorrect that the question is whether a reasonable person may have viewed it as a lobby, and the Court rejected this argument.  As the Court squarely held, the issue is not whether a reasonable person would have had notice that the conduct was lawful but whether Cordova had "fair notice."  *See United States v. Baldwin*, 745 F.3d at 1031-32 (quoting *Parker v. Levy*, 417 U.S. 733, 755 (1974)).  He did: "It is clear based on the regulation, the signage in the SSA entryway, the

5

instructions given by law enforcement, and Mr. Cordova's own understanding of the law that he had fair notice of the law and that his conduct in filming beyond the interior glass doors was punishable." Verdict at 7. *Baldwin* means that Cordova is unlikely to prevail if he raises this same argument on appeal.

        iii.      <u>It was not error for the government to recommend incarceration based on new arrests</u>

Cordova contests "the government's request for incarceration" based on two post-conviction arrests for misdemeanor offenses because "he has found no caselaw to support the principal that a Court may impose imprisonment on the basis that a Defendant has been charged with a separate offense for which he has not been convicted." Mot. at 4.

But it is routine to consider post-arrest or post-conviction conduct at the time of sentencing, regardless of whether it resulted in a conviction. *See United States v. Lente*, 759 F.3d 1149, 1167 (10th Cir. 2014) (finding post-conviction conduct "'may be highly relevant to several of the § 3553(a) factors' . . . because it 'provides the most up-to-date picture of [a defendant]'s history and characteristics' and 'also sheds light on the likelihood that [s]he will engage in future criminal conduct'" (citing *Pepper v. United States*, 562 U.S. 476, 491-92 (2011)). *Lente* extended the principal far beyond this case by finding post-sentencing conduct relevant even if a re-sentencing occurs long after vacatur of a previous sentence. For similar reasons, courts can consider other arrests even if they resulted in acquittal. *See United States v. Watts*, 519 U.S. 148, 149 (1997) (per curiam). Sentencing principles do not require courts to turn a blind eye to known information about a defendant: setting such a rule would disserve the public by

undermining sentencing purposes, such as whether the defendant is "likely to reoffend" if not given a sentence of imprisonment.  *See Lente*, 759 F.3d at 1168.  Indeed, Congress has made explicit that it is error to place such limitations on the discretion of a sentencing judge.  *See* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.").

> C.  *Cordova cannot establish irreparable harm because he has not challenged his conviction for Count 1*

At sentencing, the Court imposed 15 days' imprisonment on Count 1 (failure to follow official signs and directions) and 2 years' probation on Count 2 (unlawful photography).  Although Cordova proffers two bases for his appeal, both relate solely to Count 2.  Thus, even if he prevailed on appeal, it would at most require vacatur of his term of probation under Count 2.  It would not extend to Count 1 and his obligation to serve 15 days' imprisonment.  Because appellate success would not affect his prison term, he cannot show irreparable harm from an order to serve that term while he appeals.  *See* Fed. R. Crim. P. 38 (allowing defendants to separately move—and courts to separately consider—whether to stay imprisonment, fine, or probation).

> D.  *The remaining Nken factors do not support a stay*

Granting a stay would harm the interests of the United States and the public by eliminating the safeguards put in place to protect the public from further crimes and deter criminal activity by a defendant who has shown a likelihood of reoffending.  In the span of 13 months between August 2022 and September 2023, Cordova was arrested

7

for committing petty crimes on five dates.  The public interest does not support staying the sentence of someone who has demonstrated time and again he is likely to re-offend if not given serious consequences. If the defendant is continuing to commit crimes, implementation of the Court's sentence of incarceration, a fine, and probation are appropriate.  They also align with the public interest of ensuring that criminal offenders serve their sentences in a speedy manner.

Even if the defendant were "irreparably harmed" by execution of his sentence, his failure to make a strong showing of success on the merits and the interests of the United States and the public would prevail. The Supreme Court has made clear that irreparable injury alone does not require a stay. *Virginian Ry. Co. v. United States*, 272 U.S. 658, (1926) ("A stay is not a matter of right, even if irreparable injury might otherwise result."); *Nken*, 556 U.S. at 438 (Kennedy, J., concurring) (stating that "demonstration of irreparable harm, without more, is [not] sufficient to justify a stay").

### III.   Conclusion

The *Nken* factors do not warrant a stay of Cordova's sentence.  He cannot show a likelihood of success when binding precedent forecloses his grounds for appeal.  The government requests the Court enter final judgment and order Cordova to begin serving his sentence that includes imprisonment, payment of a fine, and probation.

Respectfully submitted,

COLE FINEGAN
United States Attorney

By: *s/ Craig Fansler*
Craig Fansler
Thomas Minser
Assistant U.S. Attorneys
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
Fax: (303) 454-0403
E-mail: craig.fansler2@usdoj.gov
Attorneys for the United States

**CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of October, 2023, I electronically filed the foregoing with the Clerk of Court using the ECF system which will send notification of such filing to all email addresses of record.

*s/ Lamesia Johnson*
Lamesia Johnson
Legal Assistant
United States Attorney's Office